IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


LADONNA HUDKINS,

       Appellant,

 v.                                                         Case No.  5D21-3094
                                                           LT Case No. 2021-GA-024073

MATTHEW L. HUDKINS, GUARDIAN
OF THE PERSON AND THE
PROPERTY OF THE WARD,
KEITH L. HUDKINS,

       Appellee.

_____/

Opinion filed April 28, 2023

Appeal from the Circuit Court
for Brevard County,
Lisa Davidson, Judge.

Robert J. Hauser, of Sniffen &
Spellman P.A., West Palm Beach,
for Appellant.

Keith S. Kromash, of Nash &
Kromash, LLP, Melbourne, for
Appellee.


BOATWRIGHT, J.

Appellant, LaDonna Hudkins, appeals the trial court's Order Appointing Plenary Guardian, which appointed Appellee, Matthew Hudkins ("the Guardian"), as the plenary guardian for Keith L. Hudkins ("the Ward") following a finding of his total incapacity. On appeal, Appellant challenges the procedure by which the trial court determined the Ward to be incapacitated; however, we lack jurisdiction to address that claim because Appellant failed to timely appeal the lower court's Order Determining Incapacity. Appellant additionally challenges the portion of the Order Appointing Plenary Guardian where the trial court ordered her to transfer her interests in real and personal property for the Ward's benefit. We reverse where the court erred in transferring the property interests at issue to the Guardian solely for the benefit of the Ward. In all other respects, we affirm the Order Appointing Plenary Guardian.

I.

Appellant and the Ward were married in 2017. Shortly after they were married, in 2018, the Ward executed a durable power of attorney naming Appellant as his attorney-in-fact ("2018 POA"). Pursuant to the 2018 POA, the Ward conferred to Appellant, inter alia, the power to execute estate planning documents, initiate legal actions and execute legal documents,

2

make gifts to herself, and, notably, to transfer property and assets, including real estate.

During the marriage and prior to any issue of incapacity, Appellant and the Ward were involved in two property transactions specific to this appeal. First, in 2018, the Ward executed a quitclaim deed transferring title to a condominium located in Cape Canaveral, FL ("Cape Canaveral Condo") from himself, individually, to Appellant and himself as tenants by the entirety. Subsequently, Appellant and the Ward executed a second quitclaim deed transferring title to the Cape Canaveral Condo to their Joint Trust. Second, in 2019, the Ward transferred title to his home located in Ponte Vedra, FL ("Ponte Vedra Home") to Appellant and himself as tenants by the entirety.

In July 2020, the Ward was involved in an automobile accident, following which he needed to be placed in a long-term residential treatment facility. Appellant engaged an attorney to assist her with sheltering the Ward's assets so that he could qualify for Medicaid benefits to assist with his residential treatment expenses. As a result, Appellant initiated a series of transactions designed to divert the Ward's income and assets so that he would qualify for Medicaid assistance ("Medicaid Transfers"). To effectuate these transactions, Appellant, using her authority under the 2018 POA, executed a separate durable power of attorney ("2020 POA"). Among other

3

transactions, Appellant, using the 2018 and 2020 POAs ("POAs"), executed a quitclaim deed transferring the title to Ponte Vedra Home from its status as tenants by the entirety into her individual trust and then another quitclaim deed transferring the title to the Cape Canaveral Condo from the Joint Trust into her individual trust. Appellant then placed the Cape Canaveral Condo up for sale.

Appellant and the Guardian (who is the Ward's son) subsequently became involved in a dispute over the Ward's care. The Guardian believed that, under Appellant's supervision, his father was being deprived of proper medical care. In addition, the Guardian was concerned over issues of Appellant misappropriating assets of the Ward, including placing the Cape Canaveral Condo up for sale without the Ward's knowledge.

As a result, the Guardian filed multiple petitions in the trial court. These included a Petition to Determine Incapacity, a Petition for Appointment of Plenary Guardian, and a Petition for Appointment of Emergency Temporary Guardian.[1] The Guardian alleged in the Petition for Appointment of Emergency Temporary Guardian that the Ward's assets were in immediate danger of being wasted, misappropriated, or lost because Appellant had

---

[1] The Petition to Determine Incapacity and the Petition for Appointment of Plenary Guardian were filed in separate cases in the 18th Judicial Circuit with different case numbers.

placed the Cape Canaveral Condo for sale without the Ward's knowledge or consent. The Guardian separately alleged in the Petition to Determine Incapacity that the Ward suffered from age-related dementia and was unable to make financial decisions on his own behalf.

In April 2021, the court held a hearing on the Petition for Appointment of Emergency Temporary Guardian. At this hearing, the issue of the transfer of the title to the Cape Canaveral Condo and its proposed sale was raised. However, the trial court did not enjoin the sale at that time, but instead directed the proceeds from the sale to be held in trust pending the outcome of the guardianship proceedings. Following the hearing, the trial court entered an order appointing the Guardian as the Ward's Emergency Temporary Guardian and issued letters of Emergency Temporary Guardianship.

In June 2021, the Guardian filed an emergency motion alleging that Appellant had impermissibly transferred title to the Ponte Vedra Home to her individual trust and had listed the home for sale. The Guardian sought permission from the trial court, pursuant to section 744.441(1)(k), Florida Statutes, to initiate and prosecute an independent legal action in St. Johns County, FL to invalidate the transfer of the title to the Ponte Vedra Home into Appellant's individual trust and to enjoin Appellant from selling the Ponte

Vedra Home during the pendency of the guardianship and incapacity proceedings. The record, though incomplete, indicates that the trial court held an evidentiary hearing on this emergency motion, but the court never ruled on this motion.[2]

The court held a separate, final evidentiary hearing, spanning the course of three months on four separate days, on the Petition to Determine Incapacity and the Petition for Appointment of Plenary Guardian (the "Final Hearing"). At the outset of the Final Hearing, the court initially addressed the issue of the Ward's incapacity. The trial court entered a written Order Determining Total Incapacity on August 26, 2021, in which it found that the Ward was totally incapacitated.

The parties separately presented testimony and argument over the span of the remaining days of the Final Hearing concerning whether the Ward required a plenary guardian, or whether the POAs were less restrictive alternatives; whether the Medicaid Transfers were procured through undue influence; whether Appellant had subsequently used the Medicaid Transfers to benefit herself to the detriment of the Ward; and whether the Guardian

---

[2] At the conclusion of the hearing, the parties agreed that the Ponte Vedra Home should be sold and the proceeds be distributed equally between Appellant and the Ward, but this was never memorialized in an order or a settlement agreement.

was qualified to serve as the Ward's plenary guardian. At the conclusion of the Final Hearing, the parties discussed Appellant's entitlement to her interest in the proceeds from the sale of the Cape Canaveral Condo, and it was decided that this issue would be litigated at a future hearing date. There was no discussion, however, as to disposition of the Ponte Vedra Home, as the Guardian had previously requested the authority to file an independent action regarding the property.

The trial court entered the Order Appointing Plenary Guardian, which is the subject of the instant appeal, on November 12, 2021. In the Order, the trial court found that Appellant's property transactions involving the Ponte Vedra Home and the Cape Canaveral Condo were self-serving and not in the best interests of the Ward. Based on these findings, the trial court appointed the Guardian to serve as the plenary guardian for the person and property of the Ward and ordered Appellant to transfer title to the Ponte Vedra Home to the Guardian for the benefit of the Ward. Further, the court ordered that the proceeds from the sale of the Cape Canaveral Condo be transferred into a guardianship account to be used solely for the benefit of the Ward without holding a hearing on the matter as previously discussed by the parties and the court.

Appellant subsequently filed the instant appeal, in which she initially challenges the trial court's Order Determining Total Incapacity. In addition, Appellant contests the portions of the Order Appointing Plenary Guardian in which the trial court: 1) ordered the transfer of title to the Ponte Vedra Home to the Guardian for the benefit of the Ward, and 2) ordered the transfer of all proceeds from the sale of the Cape Canaveral Condo to a guardianship account for the benefit of the Ward.

## II.

## A.

First, Appellant challenges the trial court's order determining that the Ward was totally incapacitated. Because Appellant did not timely appeal the trial court's order, we lack jurisdiction to address this portion of her appeal.

Appellant argues that her failure to timely appeal the Order Determining Total Incapacity is based on the premise that she could not have challenged that order because it did not finally adjudicate her rights and obligations in the instant proceedings. Florida Rule of Appellate Procedure 9.170, entitled "Appeal Proceedings in Probate and Guardianship Cases," provides an enumerated list of final appealable orders in probate and guardianship proceedings. See Fla. R. App. P. 9.170(b). Rule 9.170(b)(8) provides that "[o]rders that finally determine a right or obligation include, but

8

are not limited to, orders that . . . determine a petition or motion to determine incapacity or to remove rights of an alleged incapacitated person or ward." Fla. R. App. P. 9.170(b)(8). The rule thus provides that an order adjudicating a petition to determine incapacity is, by its very definition, an order that "finally determine[s] a right or obligation of an interested person as defined in the Florida Probate Code." See Giller v. Giller, 319 So. 3d 690, 690 (Fla. 3d DCA 2021) ("[Rule 9.170(b)] enumerates a nonexclusive list of twenty-three orders that fall under the umbrella of rule 9.170(b)'s finality requirement." (quoting N. Tr. Co. as Tr. of Elizabeth W. Walker Tr. v. Abbott, 313 So. 3d 792, 795 (Fla. 2d DCA 2021))). As a result, a notice of appeal would be required to be filed within 30 days of any order that falls under rule 9.170(b). See Fla. R. App. P. 9.110(b).

The Order Determining Total Incapacity, which was issued on August 26, 2021, was a final order that determined a right or obligation of an interested person as defined in the Florida Probate Code under rule 9.170(b). A Notice of Appeal was not filed in this matter until December 13, 2021, which is well past the 30-day filing limit required by rule 9.110(b). Because the portion of the appeal challenging the Order Determining Total Incapacity is untimely, we lack jurisdiction to address it, and this portion of the appeal is therefore dismissed. See Bank of N.Y. Mellon for Certificateholders of

9

<u>CWABS, Inc. v. Swain</u>, 217 So. 3d 226, 227 (Fla. 5th DCA 2017) ("A notice of appeal must be filed within thirty days of rendition of the order to be reviewed; otherwise, this Court lacks jurisdiction to entertain the appeal." (citations omitted)).

B.

Next, Appellant challenges the portion of the trial court's Order Appointing Plenary Guardian directing her to transfer title to the Ponte Vedra Home to the Guardian for the benefit of the Ward. Originally, Appellant and the Ward held title to the Ponte Vedra Home as tenants by the entirety. The court found that Appellant misused the POAs issued to her and that the transfer of the Ponte Vedra Home to her individual trust was self-serving. However, rather than ruling on the Guardian's pending request to initiate an independent legal action to invalidate the transfer of the Ponte Vedra Home into Appellant's individual trust, the court instead ordered Appellant to transfer title to the Ponte Vedra Home solely to the Guardian to be used for the benefit of the Ward.

The guardianship court may authorize a guardian to take possession of pre-guardianship assets of a ward. Section 744.361(12) provides:

> The guardian, if authorized by the court, shall take possession of all of the ward's property and of the rents, income, issues, and profits from it, <u>whether accruing before or after the guardian's appointment,</u>

10

> and of the proceeds arising from the sale, lease, or mortgage of the property or of any part. All of the property and the rents, income, issues, and profits from it are assets in the hands of the guardian for the payment of debts, taxes, claims, charges, and expenses of the guardianship and for the care, support, maintenance, and education of the ward or the ward's dependents, as provided for under the terms of the guardianship plan or by law.

§ 744.361(12), Fla. Stat. (2021) (emphasis added).

This statute has been construed as allowing the guardianship court to authorize the guardian to pursue, on the ward's behalf, the rescission of a pre-guardianship transaction. McGilton v. Millman, 868 So. 2d 1259, 1260 (Fla. 4th DCA 2004). This can be accomplished by the guardian seeking the authority from the guardianship court to file an independent legal action pursuant to section 744.441(1)(k). See generally McGilton, 868 So. 2d at 1261 ("[I]f a guardian needs to take action to preserve the property of a ward, it is appropriate to file a cause of action . . . with the guardianship court's approval." (citing Cohen v. Cohen, 346 So. 2d 1047 (Fla. 2d DCA 1977))).

Moreover, even if a property transaction has been rescinded, the court cannot then allocate the property contrary to established legal principles. Section 744.457(1)(a) provides:

> All legal or equitable interests in property owned as an estate by the entirety by an incapacitated person for whom a guardian of the property has been appointed may be sold, transferred, conveyed, or

11

mortgaged in accordance with section 744.447, <u>if the spouse who is not incapacitated joins in the sale, transfer, conveyance, or mortgage of the property</u>.

§ 744.457(1)(a), Fla. Stat. (2021) (emphasis added). As a result, section 744.457(1)(a) requires the spouse who is not incapacitated to consent before an entireties interest in property can be transferred or conveyed. <u>Romano v. Olshen</u>, 153 So. 3d 912, 921 (Fla. 4th DCA 2014) (noting that section 744.457(1)(a) is "consistent with the Florida view of entireties ownership, that the husband and wife hold the property 'per tout,' <u>Bailey v. Smith</u>, 103 So. 833, 834 (Fla. 1925), such that both are treated as one person and 'neither spouse can sell, forfeit, or encumber any part of the estate without the consent of the other.' <u>Douglass v. Jones</u>, 422 So. 2d 352, 355 (Fla. 5th DCA 1982)").

Thus, the trial court erred when it ordered Appellant to transfer the title to the Ponte Vedra Home to the Guardian. We are aware that the trial court found that Appellant's actions regarding the Ponte Vedra Home were self-serving and that the use of the POAs was not in the best interest of the Ward. Based on these findings, the court had the authority to grant the injunction to prevent Appellant from selling the home and authorize the Guardian to pursue an independent legal action under section 744.441(1)(k) to seek to invalidate the transfer of the Ponte Vedra Home into Appellant's individual

12

trust. See McGilton, 868 So. 2d at 1261. However, it was error to order Appellant to transfer full title to the Ponte Vedra Home to the Guardian without her consent.

C.

Finally, Appellant contends that the trial court erred by ordering that the proceeds from the sale of the Cape Canaveral Condo be placed in the guardianship account solely for the benefit of the Ward. Specifically, Appellant argues that she was denied procedural due process regarding these funds because although she raised the issue below, the court adjudicated the disposition of the funds without giving her an opportunity to be heard.

As a general principle, the trial court was authorized to permit the Guardian to access the proceeds from the sale of the Cape Canaveral Condo for the Ward's benefit because (prior to the sale) the Cape Canaveral Condo was owned by Appellant and the Ward in their Joint Trust, as opposed to their previous entireties ownership. See Romano, 153 So. 3d at 912 (holding that a guardianship court can authorize the guardian to access a joint account held with the ward's spouse to pay authorized expenses of the guardianship).

13

However, it is error for a guardianship court to authorize the guardian to access the ward's jointly owned assets without first providing the other owner of those joint assets with adequate notice and a meaningful opportunity to be heard. See Zelman v. Zelman, 170 So. 3d 838, 839 (Fla. 4th DCA 2015) (reversing trial court's order transferring money from a bank account held jointly between the ward and his wife into the ward's solely-owned revocable trust because the wife's due process rights were violated, as she was not provided with a meaningful opportunity to be heard). "[T]he constitutional guarantee of due process requires that each litigant be given a full and fair opportunity to be heard." Id. (citing Vollmer v. Key Dev. Props., Inc., 966 So. 2d 1022, 1027 (Fla. 2d DCA 2007)); see also J.G.G. v. M.S., 312 So. 3d 509, 511 (Fla. 5th DCA 2020). "At its core, due process envisions 'a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties.'" Zelman, 170 So. 3d at 839 (quoting Scull v. State, 569 So. 2d 1251, 1252 (Fla. 1990)). "'[D]ecid[ing] matters not noticed for hearing and not the subject of appropriate pleadings' contravenes these principles." Id. (quoting Land Dev. Servs., Inc. v. Gulf View Townhomes, LLC, 75 So. 3d 865, 871 (Fla. 2d DCA 2011)).

The Cape Canaveral Condo was sold during these proceedings. It had been held in the Joint Trust before Appellant, using the POAs, sold the condo. The trial court ordered these funds to be held in Appellee's attorney's trust account. Once the funds were placed in the trust account, Appellant filed a petition to determine the allocation of the proceeds. At no point was the allocation of these proceeds argued below. At the end of the Final Hearing, Appellant requested to be heard on the distribution of the funds as outlined in her petition. The matter was discussed on the record, and it was agreed by the court and the parties that the matter would be heard at a subsequent hearing. However, before the hearing was held, the court, without notice to Appellant, issued its Final Order transferring all the Cape Canaveral Condo proceeds to the Guardian for the benefit of the Ward. As these were joint assets, Appellant should have had the opportunity to be heard as to the allocation of these proceeds; thus, her procedural due process rights were violated. See Zelman, 170 So. 3d at 839.

III.

We dismiss the portion of the appeal relating to the challenge of the finding of incapacity, as we lack jurisdiction. However, we reverse the court's ruling transferring the title of the Ponte Vedra Home to the Guardian for the benefit of the Ward, because the transfer was invalid. The Guardian should

be able to pursue the legal relief that he requested in the court below when he sought to enjoin Appellant from selling the Ponte Vedra Home and sought authority from the court to file an independent legal action in St. Johns County, FL to invalidate the transfer of the title to the Ponte Vedra Home into Appellant's individual trust. In addition, we reverse the portion of the trial court's order directing that the entire Cape Canaveral Condo proceeds be transferred to the guardianship account for the benefit of the Ward because Appellant has not had the opportunity to be heard on the allocation of these joint assets. On these issues, we remand for further proceedings consistent with this opinion. Finally, we affirm all other portions of the Order Appointing Plenary Guardian.

DISMISSED, in part; AFFIRMED, in part; REVERSED in part; and REMANDED with instructions.

JAY and SOUD, JJ., concur.

16